UNITED STATES of America

v.

**David L. NAHODIL.**

No. 4:CR–90–306.

United States District Court,
M.D. Pennsylvania.

Sept. 6, 1991.

---

George J. Rocktashel, Asst. U.S. Atty., Lewisburg, Pa., for U.S.

D. Toni Byrd, Asst. Federal Public Defender, Harrisburg, Pa., for defendant.

## MEMORANDUM

McCLURE, District Judge.

## I. BACKGROUND

On November 15, 1990 David Nahodil was indicted in a four-count indictment charging firearms violations. Count I alleged that on or about April 13, 1989, Nahodil used and carried a Savage combination .22 caliber rifle/20 gauge shotgun during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Count II charged that Nahodil, a convicted felon, possessed the aforementioned rifle in violation of 18 U.S.C. § 922(g). Count III charged a second violation of 18 U.S.C. § 922(g) for Nahodil's alleged possession of a 20 gauge Westernfield shotgun. Count IV alleged that on or about July 25, 1989, Nahodil made a false statement in connection with his acquisition of the Western-field shotgun, in violation of 18 U.S.C. § 922(a)(6).

On March 14, 1991, a superseding five-count indictment was filed against Nahodil. Count I of the superseding indictment charged Nahodil with making a false statement in connection with his acquisition of the Savage combination .22 caliber rifle/20 gauge shotgun in violation of 18 U.S.C. § 922(a)(6). The remaining four counts of the superseding indictment are identical to the original four-count indictment.

Nahodil entered into a plea agreement whereby he agreed to plead guilty to Count II of the superseding indictment charging him with using or carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), and the United States agreed to dismiss the four remaining counts in the superseding indictment. The plea agreement was executed by Nahodil and United States Attorney James J. West on May 22 and May 24, 1991, respectively. As a result of the plea agreement, a change of plea hearing was held on May 31, 1991. At the hearing, Nahodil pled guilty to Count II of the superseding indictment, which charged that:

On or about the 13th day of April, 1989, in Coal Township, Northumberland County, Commonwealth of Pennsylvania, within the Middle District of Pennsylvania and within the jurisdiction of this Court, the Defendant, David L. Nahodil, knowingly used and carried a firearm, specifically a Savage combination .22 rifle/20 gauge shotgun, Model 24C, Serial Number B727089, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit: distribution and possession with intent to distribute a controlled substance.

In violation of Title 18 United States Code, Section 924(c)(1).

The hearing, which lasted more than one hour, was repeatedly delayed to allow Nahodil to consult with his attorney. Nahodil sought the advice of his counsel no less than seven times during the hearing. Apparently, Nahodil's chief concern during

the hearing was that, although the firearm and drugs were located in the same room, he did not feel that this amounted to the use of a firearm "during and in relation to a drug trafficking offense". Nahodil stated that the firearm was brought up as a conversation piece and was never used as a threat. Due to this concern, the court questioned Nahodil regarding the firearm to ensure that under current legal standards it was in fact used to facilitate drug trafficking.

COURT: Did you pick up the gun?

DEFENDANT: Your Honor, she asked me about it and I, I tried to explain it to her, it's used to go hunting with me, Your Honor.

COURT: Was it in the bedroom with you?

DEFENDANT: Yes, sir, it was on the gun rack.

COURT: And while she was up in that room you did pick it up and show it to her?

DEFENDANT: Yes, sir, but not as a threat.

COURT: Did you ask Christine to bring you some ammunition?

DEFENDANT: No, sir.

COURT: Did you get ammunition?

DEFENDANT: I went down and got it myself.

\*   \*   \*   \*   \*   \*

COURT: [In state court] you plead guilty to delivery of cocaine or possession with intent to deliver, based on the facts Mr. Rocktashel has recited, isn't that so?

DEFENDANT: Yes, sir.

COURT: And during the course of it you had this firearm in your bedroom where you were with Miss Brawn (sic).

DEFENDANT: Yes, sir.

COURT: And you picked it up and you got ammunition for it.

DEFENDANT: Yes, sir.

COURT: Did you load it?

DEFENDANT: No. Your Honor, the .22 rifle was a conversation piece. Me and Miss Brawn (sic.) were out with my—Your Honor, if you take notice, the gun was bought December 23rd, two days prior to Christmas, Your Honor. My son just turned 12 years old. He took a hunter's safety course and it was my Christmas gift to my son, Your Honor.

And Miss Brawn (sic.), in fact, was with me on quite a few occasions when we went out shooting the gun, and she brought it up as a conversation piece in my home that day, Your Honor. Asking—

COURT: Now, you're the one that's pleading guilty here today, Mr. Nahodil, to this crime. And—

DEFENDANT: Yes, sir

COURT: And it's my understanding, and Mr. Rocktashel and Ms. Byrd can correct me if I'm wrong, but it's my understanding that it's not necessary for you to be convicted of this offense that you actually brandished it in the direction of Miss Brawn (sic.) or threatened her with it, isn't that correct?

MR. ROCKTASHEL: That's correct, Your Honor. It can even be concealed. But in this case it was actually—

COURT: There was a very recent case, I believe, in the Third Circuit or the Supreme Court. Ms. Byrd, are you aware.

MS. BYRD: Yes, I agree with Mr. Rocktashel.

COURT: If the weapon had been found in the bedroom, even if you had not picked it up, I think that you could be found guilty of this offense.

But in any event, that's not what happened. You did pick it up and you did show it and you did have it with you. And then you—and you knew that is what it was and that you had it there during the time when you also possessed the cocaine with intent to deliver or delivered it to Miss Brawn (sic.). Do you agree with that?

DEFENDANT: Yes, sir, I'll agree that they were both present at the same time, Your Honor.

\*   \*   \*   \*   \*   \*

MS. BYRD: Your Honor, with respect to the case law, I think it should be noted

that the courts have found that there was enough evidence to uphold the conviction on those counts where the gun was concealed or it was merely on the wall and not picked up. But I mean, obviously, it would ultimately be a jury question.

.COURT: Yes, but in this case he actually picked it up and got ammunition for it, so it goes beyond the case that you've cited. There's certainly sufficient evidence there for a jury to find him guilty of that offense.

On June 14, 1991, Nahodil filed a motion to withdraw his guilty plea pursuant to Fed.R.Crim.P. 32(d). He contends that he is not guilty of using a firearm "during and in relation" to a drug trafficking crime, and that Deborah Braun, the confidential informant and key witness in this case, has not been truthful. By supplemental brief, the government has notified the court that Deborah Braun died on August 11, 1991, at Shamokin General Hospital. Although the cause and manner of death are still under investigation, the government indicates that death was apparently due to a drug overdose.

## II. DISCUSSION

■ "If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, ... the court may permit withdrawal of the plea upon a showing by the defendant of any fair or just reason." Fed.R.Crim.P. 32(d). A determination of whether to allow withdrawal of a guilty plea requires consideration of the facts and circumstances in each case. *United States v. Crowley,* 529 F.2d 1066, 1071 (3d Cir.1976). Such a motion should be construed liberally in favor of the accused. *United States v. Young,* 424 F.2d 1276, 1279 (3d Cir.1970); *United States v. Hancock,* 607 F.2d 337 (10th Cir.1979).

However, a criminal defendant has no absolute right to withdraw a guilty plea

under Rule 32(d). *United States v. Martinez,* 785 F.2d 111, 115 (3d Cir.1986), citing *United States v. Trott,* 779 F.2d 912, 915 (3d Cir.1985); *Government of the Virgin Islands v. Berry,* 631 F.2d 214, 219–20 (3d Cir.1980). Withdrawal of a guilty plea is a privilege, not a right. *Id.* at 220.[1]

■ Both parties have cited Third Circuit cases for the three factors which the court of appeals considers when reviewing a district court's disposition of a motion to withdraw a guilty plea pursuant to Rule 32(d). These three factors are: 1) whether the defendant asserts his innocence; 2) whether the government would be prejudiced by withdrawal; and 3) the strength of the defendant's reasons for moving to withdraw. *See, e.g., United States v. Martinez,* 785 F.2d at 114.[2] While this is a correct recitation of the law concerning the court of appeals' review of a district court's ruling on a Rule 32(d) motion, the court prefers to determine the motion in accordance with the analysis set forth in the advisory notes to the Rule. This approach combines above factors (1) and (3), as they both relate to defendant's reasons for seeking the plea withdrawal, and makes them the initial consideration for the court. The court does not consider whether the government would be prejudiced by withdrawal of the plea unless and until the defendant first establishes a "fair and just" reason for the withdrawal of the plea.

The first sentence of the amended rule incorporates the "fair and just" standard which the federal courts, relying upon dictum in *Kercheval v. United States,* 274 U.S. 220 [47 S.Ct. 582, 71 L.Ed. 1009] (1927), have consistently applied to presentence motions. *See, e.g., United States v. Strauss,* 563 F.2d 127 (4th Cir. 1977); *United States v. Bradin,* 535 F.2d 1039 (8th Cir.1976); *United States v. Barker,* 514 F.2d 208 (D.C.Cir.1975). Under the rule as amended, it is made

---

1. Since the records and files in this case can conclusively resolve any issue of material fact, no evidentiary hearing is required for this motion. See *United States v. Stitzer,* 785 F.2d 1506, 1514 (11th Cir.1986); *United States v. Acevedo-Ramos,* 619 F.Supp. 570, 578 (D.P.R.1985).

2. After considering these factors, the Third Circuit will disturb a district court's ruling on a Rule 32(d) motion only if the court abused its discretion. *Id.* at 115.

clear that the defendant has the burden of showing a "fair and just" reason for withdrawal of the plea. This is consistent with the prevailing view, which is that "the defendant has the burden of satisfying the trial judge that there are valid grounds for withdrawal,"....

Although "the terms 'fair and just' lack any pretext of scientific exactness," *United States v. Barker*, supra, guidelines have emerged in the appellate cases for applying this standard. Whether the movant has asserted his legal innocence is an important factor to be weighed, *United States v. Joslin*, 434 F.2d 526 (D.C.Cir.1970), as is the reason why the defenses were not put forward at the time of original pleading. *United States v. Needles*, 472 F.2d 652 (2d Cir.1973). The amount of time which has passed between the plea and the motion must also be taken into account.

A swift change of heart is itself a strong indication that the plea was entered in haste and confusion * * *. By contrast, if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force.

*United States v. Barker*, supra.

If the defendant establishes such a reason, it is then appropriate to consider whether the government would be prejudiced by withdrawal of the plea. Substantial prejudice may be present for a variety of reasons. See *United States v. Jerry*, 487 F.2d 600 (3d Cir.1973) (physical evidence had been discarded); *United States v. Vasquez–Velasco*, 471 F.2d 294 (9th Cir.1973); (death of chief government witness); *United States v. Lombardozzi*, 436 F.2d 878 (2d Cir.1971) (other defendants with whom defendant had been joined for trial had already been tried in a lengthy trial); *Farnsworth v. Sanford*, 115 F.2d 375 (5th Cir.1940) (prosecution had dismissed 52 witnesses who had come from all over the country and from overseas bases).

Fed.R.Crim.P. 32(d) advisory committee's note, 1983 amendment.

The advisory committee note also discusses the impact of Fed.R.Crim.P. 11 on the resolution of a motion to withdraw a guilty plea prior to sentencing pursuant to Rule 32(d).

Rule 11 now provides for the placing of plea agreements on the record, for full inquiry into the voluntariness of the plea, for detailed advice to the defendant concerning his rights and the consequences of his plea and a determination that the defendant understands these matters, and for a determination of the accuracy of the plea. Given the great care with which pleas are taken under this revised Rule 11, there is no reason to view pleas so taken as merely "tentative," subject to withdrawal before sentence whenever the government cannot establish prejudice.

Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but "a grave and solemn act," which is "accepted only with care and discernment."

*United States v. Barker*, supra, quoting from *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). *Id.*

While these factors are essentially identical to those set forth in the Third Circuit cases, the note of the advisory committee states more succinctly the manner in which a district court should resolve a Rule 32(d) motion. In addition, it appears that the Third Circuit has adopted the approach set forth in the advisory note. See *United States v. Martinez*, supra, at 115–16 (citing note with approval).

■ Nahodil's motion is based on his claim that he is innocent of the charge to which he has pled guilty. He maintains that he did not carry a firearm "during and in relation" to a drug trafficking offense. Nahodil bases his claim of innocence on the

contention that the Savage combination 22 caliber rifle/20 gauge shotgun was merely a conversation piece and was not used in relation to a drug sale. Significantly, this is the same concern raised by Nahodil at his change of plea hearing on May 31, 1991. In addition, Nahodil's defense counsel was notified as early as June 6, 1991, one week after the hearing, that he was considering withdrawing his plea. On June 14, 1991, his motion to withdraw the plea was filed. Nahodil's reluctance to plead guilty to Count II was readily apparent at the hearing. In fact, the court only accepted his plea because, after numerous consultations between Nahodil and his counsel, he indicated that he still wished to plead guilty to Count II, and the facts as admitted by Nahodil were sufficient to support a jury verdict against him on Count II of the superseding indictment. These factors militate towards allowing Nahodil to withdraw his plea.

Furthermore, although it appears that circumstances surrounding Nahodil's possession of the Savage combination firearm on April 13, 1989, would be sufficient to support a jury verdict against him on Count II, a jury could still acquit Nahodil of the charge if it found his explanation credible. In evaluating whether a firearm was carried in relation to a drug trafficking crime, the court must examine the totality of the circumstances surrounding the commission of the crime such as the emboldened sallying forth, execution of the transaction, escape and likely response to contingencies that might have arisen during the commission of the crime. *United States v. Brown*, 915 F.2d 219, 226 (6th Cir.1990).

■ The aforementioned sufficiently establishes a "fair or just" reason to allow Nahodil to withdraw his guilty plea. Consequently, the burden now shifts to the government to show that it would be prejudiced by the withdrawal.

By supplemental brief the government has notified the court that its key witness, Deborah Braun, died of an apparent drug overdose. Although Nahodil has questioned Braun's credibility, even he admits that Braun, who operated as a confidential informant, was a key witness. The government argues that Braun's testimony was no less than essential with regards to Count II of the superseding indictment. The loss of this witness clearly weakens the governments case significantly, and allowing Nahodil to withdraw his plea at this time would substantially prejudice the government. See *United States v. Vasquez–Velasco*, 471 F.2d 294 (9th Cir.1973) (death of chief government witness); see also *United States v. Trott, supra*, 779 F.2d at 915 (government prejudiced by having once again to provide protection for endangered witnesses); *Government of the Virgin Islands v. Berry, supra*, 631 F.2d at 221 (government prejudiced by having to assemble witnesses after co-defendant's acquittal when joint trial was possible); *United States v. Jerry*, 487 F.2d 600, 611 (3d Cir.1973) (physical evidence discarded); *United States v. Lombardozzi*, 436 F.2d 878, 881 (2d Cir.1971) (other defendants with whom defendant had been joined for trial had already been tried in a lengthy trial); *Farnsworth v. Sanford*, 115 F.2d 375 (5th Cir.1940) (prosecution had dismissed 52 witnesses who had come from all over the country and from overseas bases).

Accordingly Nahodil's motion will be denied.